First case on our docket today, Tuesday, May 10th, 2011, 9.30 a.m. is agenda number one. Case number 110072, People v. Masterson. Counsel for the appellant, please proceed. Good morning, your honors. May it please the court. Offenders who are charged under the Sexually Violent Persons Act are allowed by statute. Excuse me, did you, I'm sorry, did you state your name for the record? I'm sorry, Assistant Public Defender Bruce Landrum representing Mr. Masterson. Thank you. Offenders who are charged under the Sexually Violent Persons Act are allowed by statute to retain a psychiatric expert, while offenders charged under the Sexually Dangerous Persons Act do not. Because of this distinction, James Masterson, who was charged under the SDPA, Sexually Dangerous Persons Act, who was denied the opportunity by the trial court to retain an expert at trial, was deprived of his constitutional rights guaranteed by the Equal Protection Clause. And since this right to present witnesses and to rebut adverse testimony is fundamental, strict scrutiny is required, which means that the state must show a compelling state interest to differentiate. Counsel, as a matter of clarification, did the defendant seek a forensic psychiatrist of his own choosing, and at his own expense, or did he ask the court to appoint an expert at the county's expense? He asked the court to appoint one. Thank you. Mr. Landrum, we don't even get to the rational basis, do we, if we find that they're not similarly situated under the SDPA and the SDPA, do we? Right. And in the 2004 case out of this court, People v. Burns, and I know there was a due process element to that case, but didn't we specifically say that the two acts, one under the SVPA and one under the SDPA, are directed at different categories of offenders? That the SDPA provides an alternative to criminal prosecution, while the SVPA provides commitment in addition to criminal proceedings? Yes. But as you said, People v. Burns was based on due process. Right. But we did make that specific statement, and wouldn't that indicate that the respondents under the two acts are not similarly situated then for equal protection grounds? Or equal protection purposes, rather? Well, the fact, because that was also stated by the appellate court in this case, but the fact that the only difference that would make them not similarly situated is the fact that one group of offenders are charged in the alternative, and one is charged additional. That's like a distinction without any difference. The only thing that means is that there are two different purposes involved. This court in the adoption of LTM was faced with a similar situation, in which you had two groups of parents. One group of parents under the Juvenile Court Act would be allowed to have a court-appointed attorney, but under the Adoption Act, the only way they could get a court-appointed attorney would be if there was a case of a mental problem. And this court held that even though the two statutes had a different purpose, just like the SVPA and SVVA, just because they have different purposes, the people involved are still similarly situated. In that case, the court held that both parents would be faced with a loss of parental rights, based on the same finding. Similarly, in this situation, it's the same thing. The only compelling and relevant component involved is the fact that both groups of offenders would be facing the possibility of permanent commitment. It doesn't matter the fact that one is charged as an alternative to criminal prosecution and one is charged in addition, that's just a charging apparatus. Once they're placed in the system, they are similarly situated. Once they're placed in the system, both groups of offenders will face the possibility of permanent commitment, based on a psychiatric finding. However, you don't respond to the state's argument that the individuals under both acts are actually accorded the same treatment, since two psychiatrists are involved in both types of commitment proceedings. But you see, this argument, so far this argument has always been advanced on the basis of the appointment of a psychiatrist. But the fundamental right here is under Chambers v. Mississippi, you have a right to present witnesses. You have a right to rebut adverse testimony. That's a fundamental right. And if the state, under the Sexually Dangerous Persons Act, the state gets to retain two psychiatrists, these two psychiatrists come up with the finding the defendant has no opportunity to rebut anything that they say. Their fundamental right to present witnesses and the fundamental right to rebut adverse testimony has been denied. Counsel, you just indicated that the state could choose the two experts under the SDPA. Isn't it the court that appoints those two experts? They're appointed, but in actuality, you know, these are people that are hired, these people are hired by the state. But ultimately it's the court that's making this decision. It's not the choice of the state. The court can certainly hear argument as to whether or not these are, in fact, independent experts, correct? True. But yet still, a person should be able to have their own expert if the purpose of it, see, the purpose of the expert in the case of what we're trying to report is to rebut testimony provided by the state. Now, what type of a constitutional guarantee do we have if this person is appointed by the court and comes from the same place that the court appointed a psychiatrist from the state? In this case, in particular, if you read the transcript, the testimony of both psychiatrists called by the state, they were almost identical. It was as if they parroted each other. You said they come from the same place. Are you saying that there's a pool of psychiatrists that's approved by the state's attorney's office? Well, these people, I think both groups, I think they work for the psychiatry industry. I think they work for the same place. But the point is, my argument is, a person, if the purpose of the expert is to provide his case, is to rebut his testimony, if the purpose of his testimony is to rebut his testimony, then he's not a psychiatrist. If he's going to rebut testimony presented by the state, then under Chambers v. Mississippi, he has a fundamental right to present testimony. Are you presupposing that if the court were to grant the defendant's motion or the respondent's motion to appoint an expert on his behalf, that will naturally result in a different finding by that individual? Are we presupposing that these experts are not independent and they're not? We have no way of knowing what the outcome, but the key here is fundamental fairness. Well, getting back to Justice Tice's question, that if these other two psychiatrists are appointed by the court, they're not selected by the state, why doesn't that give your client the protection he needs? Well, I think the issue is that Mr. Masterson should be able to choose his own expert, and if he's not allowed to choose his own expert, see, this is an equal protection argument, but it's based on a fundamental deprivation. But under the Sexually Violent Persons Act, the offender has the opportunity to choose his own expert. And the state, under the SVPA, chooses its own expert, correct? Correct. So the state chooses an expert and the respondent is allowed to choose his own expert. Correct. In the section of the SDPA that was at issue in Burns, the institution where the defendant has been held provides the experts, correct? In Burns, yes. And here is a different system altogether. It's the court that chooses. So the state is not the one, nor is the institution the one that chooses the expert, it's the court. Why doesn't that guarantee the kinds of rights to the defendant that you are suggesting he deserves? Because as an equal protection argument, if there's no reason, there's no compelling state reason, no compelling state argument, there's no compelling state argument. There's no compelling state interest that should prevent my client from the same opportunity that is afforded an offender under the Sexually Violent Persons Act. So even what your Honor is saying is true, the issue here is equal protection. There's no compelling reason for the state to discriminate. There's no compelling reason for the state to allow one group of offenders to have its own expert and the other not to. In the state's brief, the state also tried to contend that the groups of offenders are not similarly situated, because according to the state, the sexually violent persons present a pose of greater threat of violence. Because under the Sexually Violent Persons Act, a person must have been convicted of a sex crime or a murder motivated by sex, whereas under the Sexually Dangerous Persons Act, it could be a very minor offense. But that's a very specious argument, because under the Sexually Dangerous Persons Act, it covers a full array of crimes. Even crimes just as violent as those under the Sexually Violent Persons Act. And also, if persons under the Sexually Violent Persons Act are more dangerous, so to speak, it doesn't make sense for them to be housed in the DHS, whereas the persons charged under the Sexually Dangerous Persons Act are housed in a secure, more secure facility. So if you get right down to it, the fundamental issue here is that these people, both sets of defendants, are similarly situated, because they both face the possibility of permanent commitment. The commitment is based on a psychiatric finding. However, my client and similarly situated people of his category are not allowed to choose his own expert as the other groups of defendants in the Sexually Violent Persons Act. Therefore, we ask you to reverse the decision of the appellate court. I'm sorry, Mr. Landrum. Is there any import at all, though, that the SDPA looks at an alternative to criminal prosecution, where the SVPA has commitment plus criminal prosecution? I don't see how that makes a difference, because that's the apparatus that put the offenders into this system. In other words, if a person is charged with a crime under the SDPA, they are not allowed to choose their own expert. As your Honor said, he can be, the matter can proceed under the Sexually Dangerous Persons Act, as opposed to trying him in a criminal case. Is there any analogy to be drawn, like in juvenile matters, there are certain, there are limited protections in certain cases, because they're not deemed criminal in nature, some of the proceedings are not deemed criminal in nature. Doesn't the fact that there is the possibility of a criminal proceeding in one and not the possibility in another, doesn't that have any import at whatever with respect to whether they're similarly situated or not? Well, I feel that the purpose of this distinction, I feel, is to give the state's attorneys more flexibility. But the key component is that both sets of defendants face the same punishment. Both sets of defendants face the same punishment based on the same fact finding. So the fact that one has been placed in this situation as an alternative to a criminal prosecution, and the other in addition to, I really don't see how that affects the ultimate point in that they both face the same punishment. The only thing that means is that there's a different way to initiate the charging apparatus. That's the only difference I see. Thank you, Mr. Landrum. Thank you. Counsel for the appellee. Good morning. Assistant State's Attorney Mary Boland on behalf of the people. I'm from Cook County, Illinois. Good morning, counsel, Mr. Chief Justice, and may it please the members of the court. Let me start with the similarly situated just to clarify. Mr. Masterson is a classic example of a person who comes within the Sexually Dangerous Persons Act, would not come within the Sexually Violent Persons Act. And this court is exactly correct that in Burns, this court identified that that is a major distinction, that SDP cases are alternative to criminal prosecution. SVP cases are in addition. Mr. Masterson, to determine that he was sexually dangerous requires proving the existence of his mental disorder, that it lasted in a duration for more than a year, that he has criminal propensities towards the commission of sex offenses, and he's demonstrated those criminal propensities, and that there's a substantial risk of future sex offending. Mr. Masterson started at about age 13 exposing himself to women. He started shoplifting pornography around this time. At 14 and 15, he was arrested for indecent exposures. He admitted to drinking heavily. He has been diagnosed with alcohol as part of his offending cycle. He admitted to stalking and following thousands of women, appearing at their workplaces, writing letters to them. He admits to having at least ten victims, four women and six girls. So for the Sexually Dangerous Persons Act proceeding, any criminal charge would be sufficient. And if you look in his background, in June of 1983, when he was not quite 20, Mr. Masterson decided he would, he was fired from a job, he was angry, he got in his van and he decided to take it out on someone. He saw a 15-year-old girl walking to school in some gym shorts, decided that those shorts were provocative to him and so he tried to get her to come in the van and she wouldn't do that. So he pulled the van over, took a screwdriver and put that screwdriver to her neck and sexually accosted her. He was charged with aggravated assault, a charge given the circumstances of the case that would bring him within the purview of the Sexually Dangerous Persons Act. It is not a trigger for a sexually violent person's case. He was given inpatient counseling and outpatient and yet just over a year later he devised a plan to sexually molest a 12-year-old. He befriended her brother, brought the brother some things, including a radio, gave him some money and got the brother to agree to bring his 12-year-old sister along for a ride. And then to get out of the van and leave the 12-year-old along with the respondent. And when the respondent was alone with the 12-year-old, he put her on his lap, he had her watch some pornography that he had bought with him and he sexually molested her. He was arrested in that case for criminal sexual abuse, even a conviction of which is not a trigger for a sexually violent person's act. But given the facts of that case would have brought him within the purview of the Sexually Dangerous Persons Act. By February of 1997, a respondent had been paying for sex to a woman who had a young daughter. That daughter was nearing the age of 12 years old. The respondent decided he wanted to have sexual access with that 12-year-old. So he offered to pay the mom for sex acts with the 12-year-old in a very similar fashion to the prior case with the other 12-year-old. He was arrested when he came to the door of the house expecting to be admitted to the 12-year-old and her brother answered the door instead. He had his bag of pornography with him, some handcuffs in the bag and $500 in his pocket. So he was arrested for attempt ag crim sex abuse and that's the case that brings him before this court as a sexually dangerous person. Any of those charges would have sufficed to bring him before this court as a sexually dangerous person. None of those would have brought him to this court as a sexually violent person. Because as counsel has stated here today, a sexually violent person is only certain designated offenses and that has to go to a conviction. And it is at the end of that conviction that the independent civil proceeding, it's not about punishment. It's about containment and confinement of those who are sexually dangerous or sexually violent. But it is at the end of that commitment period, I'm sorry, confinement period as a result of the conviction of a designated sex offense or a sexually motivated murder. And so those individuals pose a different degree and a nature of risk and therefore the legislature has rationally determined that there are two different classes of groups to which these types of proceedings apply. Respondent's comments about the LTM case, those obviously parental care control and custody of children are strictly construed because those are fundamental rights. And we have, this court has already in Pembroke in 1976 said the rational basis test applies to equal protection challenges with regard to the sexually dangerous persons act. But ultimately, however, even if you get to look at the procedures, respondent has suffered no disparate treatment here. The procedures are different because they relate to the different postures of the cases as they proceed in the system. And these procedures need not be identical. An SDP case arises out of that criminal proceeding. Once the petition is filed, as the court has noted, it is the court that appoints the experts. They are not the state's experts. They are not the respondent's experts. They are the court's experts. And they are neutral and independent. And respondent here has never claimed a challenge in the lower court below or in this court to the competence or the independence or the qualifications of Dr. Flippen was from the forensic clinical services, which is the institute that's connected with the court system in Cook County. Dr. Henry had left that system and was in private practice at the time of this case. So they were not out of the same facility. Contrast that with an SVP proceeding, which arises, as I said, as an independent proceeding. At the end of that, within six months of his release, DOC is going to evaluate that person for placement in the community, either on MSR or in a parole procedure. If it's a sexually motivated or sexually violent designated offense, they're also going to screen him for determination as to whether he's appropriate for an SVP proceeding. And at that time an evaluation is done with a person who is qualified under the SVP Act. Then the prosecuting authorities are notified. And what will happen is if he is an appropriate candidate, he will be transferred from whatever DOC facility he is in down to Rushville. It's actually north of here, so I guess it would be up to Rushville from here. But in central Illinois. And that's because the DOC time of jurisdiction is ending. He has served his time, and so he will go to a DHS facility. If that doesn't take place in sufficient time, then when the people file a petition for SVP, the court must hold a detention hearing and probable cause hearing within 72 hours if he's in custody, and then the court's order will transfer him to Rushville. But what will happen in that case is the case will be filed in the county where the crime for which he was in DOC took place. So for instance, just to kind of separate it out, if it was a Kane County crime, it would be a Kane County petition, a Kane County judge, a Kane County prosecutor, a Kane County defense attorney. And so the procedure there is that DHS has evaluated him down here at Rushville. There will be a psychologist who is qualified to testify. But again, both respondent and the state have the ability to use either one of those experts or both. The state must put on some expert evidence, and so they're ordinarily going to use that DHS expert. But they also have the right to have an expert of their own. And so correspondingly, the respondent has a right to request or retain an expert. So clearly there are differences in procedures. They relate to the procedural posture of the case, and they're rationally connected to the schemes that Illinois has developed for these two types of cases. But counsel, your opponent argues that while these may be different mechanisms, ultimately a person against whom the STPA is being applied or the SVPA is looking at permanent commitment. So the ultimate result is the same under either one of the procedures. Is that true? No, that's not true. It's indeterminate commitment. I would agree to that. But what happens in SVP cases is within six months a report must be filed to the court. Remember, he served his time in an SVP case. So within six months a report has to be filed to the court, and then every year thereafter. And he has an opportunity to file for recovery. In an SDP case, he can literally file for recovery. Actually, Mr. Masterson did while these proceedings were going on. He can file for recovery at any time. There are limits in terms of if a court finds that he's not appropriate for recovery, then it's up to one year. And so then there's a consistent time frame between them. But it is indeterminate confinement precisely because they are sexually dangerous for the reasons that the experts will testify to in given cases. But it may be that one individual is able to gain release into the community within a year's time or a shorter period of time. Another individual continues to be evaluated and continues to be kept confined because that's necessary for the individual case. So... Are you aware of anyone who's ever released under either one of these acts? Actually, there are some cases where there are releases. And in my research, I was able to find those. And in fact, in one of the Dr. Karich cases, there are a number of cases where Dr. Karich, who was the head of Big Money, which is where SDP cases go. In that case, the court talked about in 32 of the proceedings, Dr. Karich agreed that he was no longer sexually dangerous. So there are cases where individuals are coming out. There are cases where they're not appropriate. These are chronic and lifelong, usually, issues, which is my understanding from the reading of the cases, not being, of course, a psychiatrist myself. But these are chronic and lifelong issues. And these are very rare cases. Even though we're talking about SDP and SVP cases, of the thousands of offenders who commit sex offenses or other types of offenses, there are only about, I reported in my brief, I think 156 in the DOC's annual report that qualifies as SDP cases. And I think there are less than 300 SVP cases in the state of Illinois. So very rare cases, but obviously some of the most severe, and that is why they require confinement until experts determine that they're appropriately recovered. But there is no time frame. It is indeterminate. It is up to the individual and their ability to recover with the aid of treatment that the state of Illinois gives. Nothing in this record demonstrates that a respondent's been harmed. Respondent is not constitutionally entitled to a third opinion. The circuit court properly applied the statute. It exercises discretion to deny respondent's request for the appointment of a third expert. The playing field is level in this case, and we would ask this court to affirm the appellate court's opinion in this matter. Mr. Landrum. Very briefly, Your Honor. Counsel stated, pointed out the criminal background of my client and pointed out the many differences between the two statutes. We agree that there are differences. And we agree that there's a need for both statutes. What we don't agree is the fact that one that says, and she's correct when she said that the commitment is indeterminate. But there's a possibility of permanent commitment. And that applies to both groups of offenders. In People v. McVeigh, the same argument was advanced, and the Illinois appellate court decided that the groups of offenders were not necessarily situated, but the only reason was because of the definition of mental disorder. In People v. McVeigh, the appellate court ruled that since the SVP offenders were, that they had to prove the possibility of committing sexually violent acts in the future because of that. That was the only reason that the court in People v. McVeigh held that they were not similarly situated. However, this was, but this has changed with the People v. Masterson 1. This court in People v. Masterson 1 made the definition of the SDV offenders identical with the SVP offenders. Once they made it identical, the distinction that was pointed out in People v. McVeigh no longer exists. Therefore, they are similarly situated. Thank you. Thank you, Mr. Landrum. Case number 110072, People v. Masterson, agenda number one is taken under advisement.